IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| SUZANNE WENDY SCHMIER, | ) |
| :--- | :--- |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 16-CV-590-NJR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Suzanne Schmier was indicted in May 2014 on one count of conspiring to commit mail and wire fraud in connection with telemarketing fraud in violation of 18 U.S.C. § 1349. *United States v. Schmier*, SDIL Case No. 14-cr-30096-NJR, Doc. 1. Schmier pleaded guilty to the charge in January 2015. *Id.* at Docs. 21, 22. On June 30, 2015, she was sentenced to 48 months in prison followed by two years of supervised release. *Id.* at Docs. 34–36. Schmier was released from prison and began serving her term of supervised release on November 21, 2017. *Id.* at Doc. 53.

On May 31, 2016, prior to her release from prison, Schmier filed a timely *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, arguing that her attorney, Aaron Matthew Cohen, rendered ineffective assistance of counsel for the following reasons:

1. Cohen failed to secure a binding plea agreement under Rule 11(c)(1)(C);

2. Cohen failed to object at sentencing to the Court's comments linking Schmier's term of imprisonment to her need for substance abuse treatment and mental health treatment;

3. Cohen failed to object at sentencing to the Government's arguments linking the length of Schmier's sentence to the Residential Drug Treatment Program;

4. Cohen failed to object to the characterization of Schmier's prior robbery conviction as a crime of violence; and

5. Cohen failed to file a notice of appeal after Schmier requested that he do so.

(Doc. 1).

## DISCUSSION

28 U.S.C. § 2255 requires a court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Courts have limited the availability of relief under Section 2255 to situations involving "an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

The Sixth Amendment provides for the right to effective assistance of counsel in a criminal proceeding. U.S. CONST. amend. VI; *United States v. Recendiz*, 557 F.3d 511, 531

(7th Cir. 2009) (citing *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970)). A party claiming ineffective assistance of counsel must meet the familiar two-part standard set forth in *Strickland* by showing that his counsel's performance fell below an objective standard of reasonableness and that his defense was prejudiced by the subpar representation. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

To satisfy the first part of the *Strickland* test, the petitioner must "[identify] acts or omissions of counsel that could not be the result of professional judgment." *Sussman v. Jenkins*, 636 F.3d 329, 349–50 (7th Cir. 2011) (citations omitted). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (citations omitted). As for the second part of the *Strickland* test, the petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake*, 723 F.3d at 879 (citation omitted). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Id.* (citation omitted).

An evidentiary hearing on the Section 2255 motion is not required when "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Hutchings v. United States*, 618 F.3d 693, 699–700 (7th Cir. 2010) (citation omitted). On the other hand, a hearing should be granted if the petitioner "alleges facts that, if proven, would entitle him to relief." *Hutchings,* 618 F.3d at 699 (citation omitted). In this case, no evidentiary hearing was conducted because the parties' filings and the record in

Schmier's criminal case clearly demonstrate that she is not entitled to any relief.

## A. Waiver of Right to Collaterally Attack Conviction and Sentence

The Court begins by noting that Schmier waived her right to collaterally challenge her sentence pursuant to 28 U.S.C. § 2255. *See United States v. Schmier*, SDIL Case No. 14-cr-30096-NJR, Doc. 21. The relevant paragraph in the plea agreement broadly states:

> The Defendant is aware that Title 18, Title 28 and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack. However, in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives the right to contest any aspect of this conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. . . . The Defendant's waiver of the right to appeal or bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit, which is declared retroactive by those Courts, and which renders the defendant actually innocent of the charges covered herein, and 2) appeals based upon Sentencing Guideline amendments which are made retroactive by the United States Sentencing Commission (see U.S.S.G. § 1B1.10).

*See id.* at pp. 9–10.

Such a waiver is enforceable unless the petitioner can establish that (1) the court relied on a constitutionally impermissible factor, such as race or gender, in sentencing her, (2) her sentence exceeds the statutory maximum, (3) her plea was not knowingly or voluntarily made, or (4) counsel was ineffective with respect to the negotiation of the plea agreement. *United States v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014); *Hurlow v. United*

*States*, 726 F.3d 958, 964 (7th Cir. 2013). Schmier does not argue that either of the first two exceptions apply (Doc. 1). The last two exceptions could potentially apply, however, in light of Schmier's first argument that her attorney told her the plea agreement was binding on the Court. The Court will address that argument in order to determine whether Schmier can overcome the waiver in her plea agreement.

The plea agreement indicates that the parties anticipated an offense level of 20 and a criminal history category of I, which would result in a guideline sentencing range of 33 to 41 months. SDIL Case No. 14-cr-30096-NJR, Doc. 21, p. 6. The Government also agreed to recommend a low-end guideline sentence. *Id.* Thus, at the time Schmier entered into the plea agreement, she believed she would receive a sentence of less than three years. Unfortunately, however, the Government and Schmier's attorney failed to fully evaluate her criminal record prior to entering into the plea agreement. The Probation Office determined that Schmier actually had a criminal history category of VI, which resulted in a guideline sentencing range of 70 to 87 months. *Id.* at Docs. 24, 39. The Court adopted the Probation Office's calculations and determined that Schmier had a guideline range of 70 to 87 months. *Id.* at Doc. 39. The Court then imposed a below-guideline sentence of 48 months, *id.* at Docs. 36, 39, which was still significantly longer than Schmier expected it to be at the time she pleaded guilty.

Schmier now argues that her attorney told her that he negotiated the criminal history category of I and that the Government and Court were bound by the terms of the plea agreement (Doc. 1). Schmier contends that she relied on these

misrepresentations in deciding to plead guilty, and therefore her plea was not knowingly or voluntarily made (Doc. 1).

The terms of the plea agreement itself and the statements Schmier made under oath during the Rule 11 colloquy tell a different story. The plea agreement very plainly states that the parties' calculations for the offense level and criminal history "are not binding on the Court" and "the Court will ultimately determine the Guideline range after receiving the Presentence Report." SDIL Case No. 14-cr-30096-NJR, Doc. 21. During the plea colloquy, Schmier stated that she had read the plea agreement. *Id.* at Doc. 49. She was further advised and she acknowledged "that the terms of [the] plea agreement, including any recommendation of sentence agreed to [by] you and the United States Attorney, is not binding on the Court." *Id*. She was advised and she acknowledged that although she and her attorney had discussed how the guidelines would apply to her, the Court would not be able to determine an advisory guideline range until the presentence investigation report was completed. *Id.* She was advised and she acknowledged that the sentence ultimately imposed by the Court "may be very different from any estimate [her] attorney ha[d] given [her]" *Id.* This was reiterated when the Court stated, and Schmier acknowledged, that she understood she might "receive a more severe sentence than requested or recommended." *Id.*

Simply put, the Court conducted an extensive colloquy, and Schmier made multiple assurances to the Court that reflect her understanding that the plea agreement was not binding on the Court and that she could receive a sentence that was longer than what the parties initially anticipated. The representations made by Schmier at the plea

colloquy are presumed true. *United States v. Weathington*, 507 F.3d 1068, 1072 (7th Cir. 2007). Thus, to the extent it is true that Schmier's attorney misinformed her that the plea agreement was binding on the Court, the mistake was corrected prior to the entry of her guilty plea.

Additionally, after the Presentence Investigation Report was released, revealing the parties' mistaken calculations, Schmier did not object to the PSR nor did she ask to withdraw her plea. In fact, at sentencing, the Court brought up the parties' mistaken calculations in the plea agreement, and Schmier's attorney acknowledged that it was not grounds to withdraw the guilty plea and the plea agreement remained valid and binding. SDIL Case No. 14-cr-30096-NJR, Doc. 42. As such, the Court is satisfied that Schmier knowingly and voluntarily entered into the plea agreement. *See, e.g., United States v. Gilliam*, 255 F.3d 428, 434 (7th Cir. 2001) (finding defendant's plea was knowing and voluntary even though the government and his attorney failed to properly evaluate his criminal record prior to his plea and he was ultimately sentenced as a career offender to a term of imprisonment must greater than he anticipated when he pleaded guilty).

Furthermore, there is no reason to find that her attorney was ineffective for failing to negotiate a plea agreement that was binding on the Court under Rule 11(c)(1)(C) or that she was prejudiced by this failure. Binding plea agreements under Rule 11(c)(1)(C) are rarely used in this District, and Schmier has not provided any facts to show that the Government would have considered offering such a plea agreement. *See United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) (explaining Government has no obligation to

discuss or offer a plea agreement). *See also United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) ("The guarantee of counsel in the sixth amendment is designed to promote fair trials leading to accurate determinations of guilt or innocence. The Constitution does not ensure that lawyers will be good negotiators, locking in the best plea bargains available.")

In sum, Schmier has failed to show that her plea was not knowing or voluntary or that her attorney was ineffective with respect to the negotiation of the plea agreement. Therefore, the waiver provision of her plea agreement is enforceable and dooms her requests for relief under Section 2255. Even if the Court were to find that Schmier's claims were not waived, however, she is not entitled to relief on any of her claims.

**B. Failure to Object to the Court's Statements Regarding Treatment**

The Supreme Court held that the Sentencing Reform Act "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." *Tapia v. United States*, 564 U.S. 319, 332 (2011). Schmier claims that the Court's "main discussion in all of its justification for sentencing . . . [was her] need for rehabilitative drug treatment and mental health treatment," and her attorney was ineffective for failing to make an objection pursuant to *Tapia* (Doc. 1, p. 20). Schmier points to the following statements made by the Court during the sentencing hearing that she claims reveal a *Tapia* violation (Doc. 1).

> I also think, as I said, there's a need for specific deterrence. A prison sentence -- I mean, at the end of the day Ms. Schmier just has to get a grip on her addiction, which it sounds like she is on the right track, and I hope that she stays on that right track. . . .

> Now, I also think even though Ms. Schmier has made great strides towards sobriety, I have to consider the need to protect the public from further crimes, and I think until the addiction issues are fully under control, after years of sobriety, that incarceration is appropriate.
>
> Now, perhaps, one of the biggest factors is to provide the defendant is with needed education or vocational training, medical care, other corrective treatment[. S]he needs substance abuse treatment[, s]he needs mental health treatment, she needs medical treatment, which she will get.

SDIL Case No. 14-cr-30096-NJR, Docs. 42, p. 72. According to Schmier, these comments demonstrate that the undersigned linked the imposition and length of the term of imprisonment to her need for substance abuse treatment and mental health treatment (Doc. 1, p. 20).

The Court disagrees. Its comments, on their face, are very clearly different than the comments made in cases in which the appellate courts found error. In those cases, "the sentencing judge explicitly tied the need to impose a sentence of particular length to the defendant's ability to participate in a . . . treatment program." *United States v. Gilliard*, 671 F.3d 255, 260 (2d Cir. 2012). For example, in *Tapia*, the sentencing judge imposed a 51-month term of imprisonment, stating that "[t]he sentence has to be sufficient to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program." *Id.* at 322. The judge then reiterated that sentiment, stating "one of the factors" that affected the imposition and length of the sentence was "the need to provide treatment. In other words, so she is in long enough to get the 500 Hour Drug Program." *Id.* The Supreme Court held that these statements suggested "the court may have calculated the length of [the defendant's] sentence to ensure that she receive certain rehabilitative services." *Id.* at 334–35. "And that a

sentencing court may not do" because "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Id.* at 335.

As another example, in *United States v. Kubeczko*, the Seventh Circuit vacated and remanded a sentence because the judge justified the 30-month sentence she imposed by stating:

> [The defendant] has had mental health and perhaps substance abuse issues for which he needs treatment. My concern about the guideline sentence here in this case of 21 to 27 months is that even a high-end guideline sentence may not be long enough for the Bureau of Prisons to designate [the defendant] to a location where he can get mental health treatment. . . . [A] stay in the Bureau of Prisons of a significant length is necessary in order for him to get the Bureau of Prisons' inpatient treatment program. I believe that he has to be in one place longer than 18 months for that purpose. . . . I want to impose a sentence of 30 months in the custody of the Bureau of Prisons, slightly above the guideline range, because I do want to give the Bureau of Prisons every opportunity to place [him] in a facility where he can begin getting the treatment.

660 F.3d 260, 261 (7th Cir. 2011).

Here, when the Court's comments are read in the context of the entire transcript from the sentencing hearing, it is clear that the undersigned did not tie the imposition of sentence, or the particular length of the sentence, to Schmier's addiction issues themselves or to Schmier's ability to participate in a specific treatment program. SDIL Case No. 14-cr-30096-NJR, *see* Doc. 42.

Prior to making the first two comments to which Schmier objects, the Court acknowledged that Schmier had been battling addiction for about 70% of her life and expressed its belief that Schmier's addiction issues were still ongoing to some extent. The

Court also acknowledged Schmier's earlier admission that her extensive criminal history was driven by her addictions and almost every incident occurred when she was under the influence of some sort. SDIL Case No. 14-cr-30096-NJR, *see* Doc. 42, pp. 66, 67, 68, 69–70. These acknowledgements make clear that the Court referenced Schmier's addiction and need for treatment in order to express its concern that Schmier was likely to commit further crimes unless and until her addiction issues were fully under control, and therefore, a term of imprisonment was needed to incapacitate Schmier and to protect the public. This is a valid basis for imposing a prison sentence and does not violate *Tapia*. *United States v. Kubeczko*, 660 F.3d 260, 262–63 (7th Cir. 2011); *United States v. Gallagher*, 526 F. App'x 658, 663 (7th Cir. 2013).

With respect to the third comment, the context shows that the Court mentioned the various treatments that Schmier needed for the purpose of addressing the availability and adequacy of the care that she would receive while in prison. Earlier at the sentencing hearing, Schmier's history of addiction, her mental health problems, and her medical issues were discussed at length by everyone: the Government, Schmier's attorney, Schmier herself, her father, her aunt, and her therapist. SDIL Case No. 14-cr-30096-NJR, *see* Doc. 42. The witnesses all expressed concern that time in prison could trigger Schmier to relapse or lead to further medical complications, perhaps even death. *Id.* at Doc. 42. The Court's comment is an acknowledgement of the unanimous testimony about Schmier's need for treatment and an assurance to Schmier and her family that the treatment she needed would be provided in prison. That much is made clear when the Court's comment is read in conjunction with the statements that

immediately follow. Together, they read:

> [P]erhaps, one of the biggest factors is to provide the defendant is with needed education or vocational training, medical care, other corrective treatment[. S]he needs substance abuse treatment[, s]he needs mental health treatment, she needs medical treatment, which she will get.
>
> Now, her dad said it is going to be on my back that she is in BOP and needs treatment, but the Bureau of Prisons has a lot of resources. My job is not to determine how inmates are handled but simply to determine what is an appropriate sentence, and I have complete faith that the Bureau of Prisons will afford the proper treatment.

Statements regarding the availability and adequacy of treatment options in prison do not violate *Tapia*. *See Tapia* 564 U.S. at 334. ("A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters."); *see also United States v. Holman*, 840 F.3d 347, 354 (7th Cir. 2016); *United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012).

In sum, read in context, none of the Court's comments identified by Schmier indicate that the Court imposed or lengthened her sentence to facilitate her rehabilitation in violation of *Tapia*. Consequently, Schmier cannot show that her counsel was ineffective by not objecting to these statements or that she was prejudiced by counsel's performance.

C. **Failure to Object to the Government's Statements**

Schmier claims that her attorney was ineffective for failing to object to statements made by the Government that Schmier should receive a sentence long enough for her to be eligible for the Residential Drug Abuse Program ("RDAP") offered by the Federal

Bureau of Prisons (Doc. 1). The Government concedes that this line of argument was inappropriate under *Tapia* and it would have been proper for Schmier's counsel to object (Doc. 6). But Schmier has not shown that but for counsel's failure to object, the result of the proceedings would have been different. As the sentencing judge, the undersigned can say that the result most assuredly would not have been any different had Schmier's counsel objected. As explained in the preceding section, neither the imposition of sentence, nor the particular length of the sentence, was tied to Schmier's ability to participate in RDAP.

**D. Failure to Object to the Government's Characterization of a Prior Felony**

Schmier's extensive criminal record includes a 2014 conviction in the State of Florida for robbery. *United States v. Schmier*, SDIL Case No. 14-cr-30096-NJR, Doc. 24, p. 19. According to the PSR and the underlying police report from the case, Schmier walked up behind a man at an ATM and tried to snatch the money out of his hands; when the victim did not let the money go, Schmier began punching him in the arms and chest, and she also choked him. *Id*. At sentencing, the Government characterized this robbery conviction as a crime of violence. *Id.* at Doc. 42. Schmier rebutted the Government's characterization during her allocution and stated that she "never touched the man" *Id*. Schmier now claims that the attorney who represented her on the robbery charge obtained video of the incident that contradicts the police report and shows she never used any violence and instead "snatched the money from [the victim] and then walked away" (Doc. 1, p. 23). Schmier argues that Mr. Cohen should have obtained that video footage, should have objected to the language of the PSR, and should have

objected to the Government's statements at sentencing that the 2014 robbery was a crime of violence (Doc. 1). Because Cohen did not do so, Schmier claims the Court relied on the Government's characterization (Doc. 1). Schmier further claims that because the Court and the prosecutor "deemed the Florida Robbery a crime of violence," she was given a higher security classification in the BOP, and she was denied the one-year early release incentive for prisoners who successfully complete the RDAP (Doc. 1).

The Court is skeptical that the alleged video footage ever existed or could have been obtained by Mr. Cohen. But even if the Court assumes that Schmier is telling the truth and she did not use any violence in committing the 2014 robbery, she has failed to show that she was prejudiced by her attorney's failure to object to the PSR or the Government's statements. Schmier attempts to establish prejudice by claiming she was given a higher security classification in the BOP and the BOP denied her request for early release after she completed the RDAP. This purported prejudice had nothing to do with Schmier's criminal proceeding in which the ineffective assistance of counsel is alleged to have occurred. *See Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (to obtain relief under Section 2255, petitioner must show that "counsel's deficiency prejudiced the defense," meaning "the result of the proceeding would have been different, such that the proceedings were fundamentally unfair or unreliable."). The purported prejudice she claims to have suffered was the result of decisions made by the BOP after the criminal proceedings concluded, and therefore could not have had any affect on her decision to plead guilty, the strength of her legal position, the imposition

of her sentence, or any other aspect of the criminal proceedings. As such, the prejudice claimed by Schmier is not legally cognizable prejudice under Section 2255.

Furthermore, the Court is unaware of any other basis on which to find Schmier was prejudiced by her counsel's failure to object to the PSR or the Government's statements pertaining to the violence involved in her 2014 robbery conviction. Neither the Government nor the Court referred to her conviction as a "crime of violence" as that phrase is used in the sentencing guidelines, and Schmier did not receive any additional criminal history points based on the Court's finding that she used violence in committing the robbery. SDIL Case No. 14-cr-30096-NJR, *see* Doc. 42, p. 19; U.S.S.G. §§ 4A1.2, 4B1.2. There is also nothing in the record that suggests the purported use of violence made any difference in the length of the sentence imposed. SDIL Case No. 14-cr-30096-NJR, *see* Doc. 42. To the contrary, the Court indicated that it would be disturbed by the robbery of an unsuspecting customer at an ATM regardless of whether the incident involved violence or not. *Id.* at Doc. 42, p. 66.

Accordingly, Schmier has failed to show that she was prejudiced by her counsel's performance.

**E. Failure to File Notice of Appeal**

Schmier's final argument is that Mr. Cohen was ineffective when he failed to file a notice of appeal, even though Schmier asked him to do so (Doc. 1). Schmier states that Mr. Cohen did not file the notice of appeal as instructed because he said she had waived her right to appeal (Doc. 1). As discussed above, the waiver was valid and enforceable, and not the product of coercion as Schmier claims. Therefore, counsel was not

ineffective for failing to file a notice of appeal. *See, e.g., Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016) ("[O]nce a defendant has knowingly and voluntarily waived his right to appeal both in a plea agreement and in court under Rule 11(b), the Sixth Amendment does not require an attorney to disregard the waiver by complying with the defendant's request to file an appeal").

### CERTIFICATE OF APPEALABILITY

Should Schmier wish to appeal this Court's ruling denying her motion, she must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to Section 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Schmier need not show that her appeal will succeed, but she must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 338 (2003). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate of appealability. FED. R. APP. P. 22(b)(1)–(3).

For the reasons detailed above, the Court has determined that Schmier has not stated any grounds for relief under Section 2255, and reasonable jurists could not debate that conclusion. Thus, Schmier has not made "a substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

## CONCLUSION

For the reasons set forth above, Suzanne Wendy Schmier's motion to vacate, set aside, or correct a federal sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

## NOTICE

If Schmier wishes to contest the Court's Order denying her Section 2255 petition, she has two options. She can ask the Seventh Circuit to review the Order, or she can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Schmier chooses to go straight to the Seventh Circuit, she must file a notice of appeal *within 60 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Schmier files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, Schmier will only be allowed to proceed on her appeal if she obtains a certificate of appealability. Here, the undersigned District Judge has already declined to issue a certificate of appealability. Thus, Schmier must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing her notice of appeal.

The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing

fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Schmier cannot afford to pay the entire filing fee up front, she must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Schmier plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If she is allowed to proceed IFP on appeal, she will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). She will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Schmier wants to start with the undersigned, she should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P.

4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Schmier showing excusable neglect or good cause.

**IT IS SO ORDERED.**

DATED: August 30, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**